# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MARCILLA NICOLE STEWART,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-14-167-SPS** |
| | ) | |
| **OKLAHOMA DEPARTMENT OF** | ) | |
| **CORRECTIONS, MICHAEL MULLIN,** | ) | |
| **TERRY MARTIN, KEVIN COLLINS,** | ) | |
| **MICHAEL MURRY, DAVID** | ) | |
| **MCGUIRE, PETER RICHARDSON,** | ) | |
| **EDWARD BELL, CASEY** | ) | |
| **BENNEFIELD, PHILLIP CAREY,** | ) | |
| **JOSEPH HENDREX, and KELLY** | ) | |
| **WEST,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

This case arises of the Plaintiff Marcilla Nicole Stewart's employment at Jess

Dunn Correctional Facility in Taft, Oklahoma. The Plaintiff has sued the Oklahoma

Department of Corrections ("ODOC"), as well as Michael Mullin, Terry Martin, Kevin

Collins, Michael Murry, David McGuire, Peter Richardson, Edward Bell, Casey

Bennefield, Phillip Carey, Joseph Hendrex, and Kelly West,[1] in their individual and

official capacities, alleging violations of Title VII, 42 U.S.C. § 1983, and Oklahoma state

law based on a hostile work environment, retaliation, quid pro quo sexual harassment,

---

[1] The Plaintiff also named as a defendant Vicki Kyzer, in her individual and official capacities, but the Plaintiff dismissed all claims against Ms. Kyzer with prejudice on October 15, 2014. *See* Docket No. 63.

failure to promote, and gender discrimination. The Defendants now all seek dismissal of the Plaintiff's Complaint. For the reasons set forth below, the Court finds that the Motion to Dismiss Defendants Collins, McGuire, Richardson, Bennefield, Hendrex, and West [Docket No. 80] should be GRANTED as to Defendants Collins, McGuire, Richardson, Bennefield, and Hendrex in their individual and official capacities, and Defendant West in his official capacity, and DENIED as to Defendant West in his individual capacity; Defendant Edward Bell's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 81] should be GRANTED; Defendant Phillip Carey's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 82] should be GRANTED; Defendant Terry Martin's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 83] should be GRANTED; Defendant Michael Mullin's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 84] should be GRANTED; Defendant Michael Murry's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 85] should be GRANTED; and Defendant Oklahoma Department of Corrections' Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 86] should be GRANTED IN PART and DENIED IN PART.

## I. Procedural History

The Plaintiff states in her Second Amended Complaint that she was employed at the Jess Dunn Correctional Center in Taft, Oklahoma beginning January 3, 2011, through October 26, 2012, when she was allegedly constructively discharged. On November 29, 2012, the Plaintiff filed an Employment Discrimination Complaint with the Equal

Employment Opportunity Commission, describing a number of encounters beginning in February 2011 and going through October 23, 2012. On January 20, 2014, the EEOC issued a Notice of Right to Sue letter. *See* Docket No. 89, Exs. 1-2. As requested by the Plaintiff in her unopposed motion, *see* Docket No. 89, the Court takes judicial notice of these documents as a matter of public record. *See Jenkins v. Educational Credit Management Corp.*, 212 Fed. Appx. 729, 733 (10th Cir. 2007) ("[I]t is appropriate, particularly in the exhaustion context, for a district court to consider evidence beyond the pleadings in resolving a challenge to subject-matter jurisdiction."), *citing Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003). *See also Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) ("[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment.") [citations omitted].

The Plaintiff then filed this case on August 28, 2013, in Oklahoma state court in Muskogee County, Case No. CJ-2013-359, against the above-named Defendants.[2] Before serving the Defendants, she filed a First Amended Petition on April 2, 2014, and subsequently served the Defendants. ODOC then removed the case to this Court and filed a Motion to Dismiss, and the Plaintiff filed an Amended Complaint on May 29, 2014. The remaining Defendants then also filed Motions to Dismiss the Amended Complaint on September 19, 2014, and ODOC once again moved for dismissal of the Amended Complaint on October 20, 2014. *See* Docket Nos. 53-58, 69. The Plaintiff

---

[2] "State court docket sheets are public documents of which the Court may take judicial notice." *White v. City of Tulsa, Okla.*, 2013 WL 4784243, at *1 n.2 (N.D. Okla. Sept. 5, 2013), *citing United States v. Mendoza*, 698 F.3d 1303, 1307 (10th Cir. 2012).

filed an Opposed Motion to Amend her Amended Complaint, Docket No. 74, to replace the original Count VIII with a claim under 42 U.S.C. § 1983 alleging civil conspiracy against the individual defendants. In a minute order, this Court granted each of the pending Motions to dismiss and dismissed the Amended Complaint, giving the Plaintiff fourteen days to amend her Complaint to bring it in compliance with *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and also granted Plaintiff's Motion to Amend her Complaint to the extent she was permitted to add the proposed Count VIII to any Second Amended Complaint filed. *See* Docket No. 78. The Plaintiff filed her Second Amended Complaint on April 6, 2015,[3] and the Defendants all filed Motions to Dismiss the Second Amended Complaint. *See* Docket Nos. 80-86. The Court has stricken all attendant deadlines in this case pending resolution of these Motions to Dismiss. In her Second Amended Complaint, the Plaintiff's claims are set forth as follows: (i) **Counts I-V**, brought under Title VII, alleging a hostile work environment, retaliation, quid pro quo sexual harassment, failure to promote, and gender discrimination, respectively, against ODOC and the individual Defendants in their official capacities; (ii) **Counts VI** and **VIII**, brought under 42 U.S.C. § 1983, alleging violations of the Equal Protection clause through approval of hostile work environment and disparate treatment of male and female employees, and a civil conspiracy, respectively, against the individual Defendants in their

---

[3] Although directed to bring her Second Amended Complaint in Compliance with *Iqbal*, the Court notes that the Plaintiff made few substantive changes to her complaint other than to add the conspiracy claim as Count VIII. All but one of the Motions to Dismiss, Docket Nos. 81-86, includes a graph describing the minor changes made in the Second Amended Complaint. Rather than duplicate that information once more, the Court simply notes that the Amended Complaint and Second Amended Complaint are substantially similar other than the above-stated change to Count VIII.

individual capacities; and (iii) **Count VII**, brought under 25 Okla. Stat. §§ 1101, 1302, alleging gender discrimination as to ODOC and the individual Defendants in their official capacities.

As an initial matter, the Court notes that the Plaintiff has conceded that she has failed to state a claim under Oklahoma state law. The Court agrees and further finds that amendment of this claim would be futile. Therefore, **Count VII is dismissed with prejudice.** *See* Fed. R. Civ. P. 12(b)(6). *See also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."), *citing Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997). The Court will address the remaining issues and claims in turn.

## II. Analysis

ODOC has moved to dismiss the claims against it, arguing: (i) the Plaintiff has failed to allege sufficient facts to support her claims under Title VII; and (ii) the Plaintiff failed to exhaust her administrative remedies, including filing timely charges with the EEOC for each alleged unlawful practice. Defendants Collins, McGuire, Richardson, Bennefield, Hendrex, and West argue that dismissal should be granted because: (i) the Title VII claims against them in their official capacities, Counts I-V, are duplicative because the Plaintiff has also named ODOC in these claims; (ii) they are entitled to qualified immunity under § 1983; (iii) the claims against Defendants Collins, McGuire, and possibly Richardson are barred by the statute of limitations; (iv) the Plaintiff has failed to allege sufficient facts against any of the Defendants to support a § 1983 claim;

and (v) the Plaintiff's complaint is devoid of facts to support her conspiracy claim. Defendants Bell, Carey, Martin, Mullin, and Murry each filed separate but identical briefs making the identical arguments that: (i) the Title VII claims against them in their official capacities, Counts I-V, are duplicative; (ii) the Title VII claims also fail to state a claim under the facts alleged; (iii) the Plaintiff has failed to state a claim on her § 1983 claim; and (iv) the Defendants are entitled to qualified immunity under § 1983. The Court now makes the following findings.

## A.  Counts I – V: Title VII

Official Capacity Claims.  The individual Defendants all argue that the Title VII claims against them in their official capacities are duplicative and therefore redundant because the Plaintiff also named her employer, ODOC.  "Under Title VII, suits against individuals must proceed in their official capacity[.]" *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) [citation omitted].  "[T]he proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer *or* by naming the employer directly."  *Sauers*, 1 F.3d at 1125 (emphasis added) (*quoting Busby v. City of Orlando*, 931 F.2d 764, 722 (11th Cir. 1991)).  *See also Lewis v. Four B Corp.*, 211 Fed. Appx. 663, 665 n.2 (10th Cir. 2005) ("[S]upervisors may be named in their official capacity and/or as alter egos of the employer, but just as a means to sue the employer, and this procedural mechanism is superfluous where, as here, the

employer is already subject to suit directly in its own name.") (*citing Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996), *and Sauers*, 1 F.3d at 1125). Plaintiff has admittedly pointed to no cases under Title VII allowing suit against both employer and employee in their official capacity, but argues that the individuals' acts were independent from and in addition to the wrongful acts of the DOC, and because she is seeking punitive damages her claims are not duplicative. In support, she relies solely on a case from the District of Colorado, *Cross Continent Development, LLC v. Town of Akron, Colo.*, 2012 WL 2568173, at *3 (D. Colo. July 3, 2012) ("[T]he Tenth Circuit has allowed suit against both the governmental entity and its agent sued in his or her official capacity if 'either separate duties were breached or separate injuries resulted' such that there is an explanation for the division of damages award between the public entity and its agent.") (*quoting J.M. ex rel. Morris v. Hilldale Independent Sch. Dist. No. 1-29*, 397 Fed. Appx. 445, 462 (10th Cir. 2010)), and statements related to a claim under § 1983. But even that same District Court dismissed duplicative claims under Title VII, *see Bushy v. Medical Center of Rockies*, 2014 WL 4627277, at *2 (D. Colo. Sept. 16, 2014) ("[P]laintiff makes no attempt to show that Dr. Johar and MCR breached separate duties and the amended complaint does not allege that each defendant caused separate injuries. Rather, the claims against Dr. Johar and MCR appear to be identical. Plaintiff has failed to justify maintaining identical Title VII claims against both Dr. Johar in his official capacity and MCR."), and this Court finds that the claims against the individual Defendants in their official capacities are claims against ODOC and for which ODOC would be liable. *See also Thanongsinh v. Board of Education*, 462 F.3d 762, 771 n.7 (7th Cir. 2006) ("The

covered entity under Title VII is the 'employer.' 42 U.S.C. § 2000e-2(a). . . . Because the claim against Mr. Javetz is a claim against his office, for which his employer, the School District, would be liable, it is no different than his claim against the School District itself."); *Cleland v. City of Caney*, 1997 WL 49136, at *3 (D. Kan. Jan. 24, 1997) ("Although plaintiff may sue a defendant in his or her official capacity, it is duplicative for plaintiff to sue both the individual defendant and the entity. Plaintiff has sued the City of Caney directly, and, therefore, the court dismisses plaintiff's Title VII official capacity claims against the individual defendants.") (internal citation omitted). **Accordingly, Counts I-V as to Defendants Mullin, Martin, Collins, Murry, McGuire, Richardson, Bell, Bennefield, Carey, Hendrex, and West, each in their official capacity, are dismissed as duplicative**.

Claims against ODOC. Plaintiff filed an EEOC charge on November 30, 2012, and received her EEOC Notice of Right to Sue on January 14, 2014. Docket No. 89, Ex. 1, p. 9. *See Jenkins*, 212 Fed. Appx. at 733 ("[I]t is appropriate, particularly in the exhaustion context, for a district court to consider evidence beyond the pleadings in resolving a challenge to subject-matter jurisdiction.") (*citing Davis*, 343 F.3d at 1294). Plaintiff's Second Amended Complaint alleges that she began her employment at ODOC on January 3, 2011, and alleges actions beginning "January or February, 2011" through October 26, 2012, when she found herself unable to return to work. *See* Docket No. 79, pp. 3-15, ¶¶ 8-44. Plaintiff's Second Amended Complaint contains five Counts alleging violations of Title VII by ODOC: hostile work environment, retaliation, quid pro quo sexual harassment, failure to promote, and gender discrimination. She acknowledges the

exhaustion requirement and the 300-day window, but asserts that, as to Count I, acts outside the 300-day window "may be considered as part of the history of acts comprising the allegedly hostile work environment." *Moody v. Oklahoma Department of Corrections*, 879 F. Supp. 2d 1275, 1283 (N.D. Okla. 2012). She does not address how the exhaustion requirement affects Counts II-V.

"Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII." *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996) (quotation omitted). Under Title VII, a Plaintiff must file a charge of discrimination "within [180] days after the alleged unlawful employment practice occurred . . . except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency . . . such charge shall be filed by or on behalf of the person aggrieved within [300] days after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e)(1). ODOC asserts that the 180-day window applies and that any claims premised on actions prior to June 2, 2012 must be dismissed. This Circuit has previously recognized that Oklahoma is a "deferral state," in which the 300-day window applied. *See, e. g.*, *Carson v. Cudd Pressure Control, Inc.*, 299 Fed. Appx. 845, 847 & n.1 (10th Cir. 2008). Although the state office in Oklahoma that handles these claims has changed,[4] courts have continued to classify Oklahoma as a deferral state. *See, e. g.*, *Avington v. Maxim Healthcare Services, Inc.*, 2015 WL

---

[4] The office of the Oklahoma Human Rights Commission, created in 1963, was closed effective June 30, 2012, and all duties and responsibilities were transferred to the newly-created Office of Civil Rights Enforcement in the Oklahoma Attorney General's office. 2011 Okla. Senate Bill 763 (not codified in the Oklahoma Statutes).

5775208, at *4 n.3 (N.D. Okla. Sept. 30, 2015) (slip copy).  The Court thus finds that the 300-day window applies to her November 30, 2012 EEOC charge, and that the Plaintiff has properly exhausted her administrative remedies with respect to claims on or after February 3, 2012.

"[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred." *National R. R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  However, "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'"  *Id.*, 536 U.S. at 117, *quoting* 42 U.S.C. § 2000e-5(e)(1).  Notably, "[a]lthough Title VII does not explicitly mention hostile work environment, a victim of a racially hostile work environment may nevertheless bring a cause of action under Title VII."  *Tademy v. Pacific Corp.*, 614 F.3d 1132, 1138 (10th Cir. 2008) (quotation omitted).  However, "[h]ostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct. . . . It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."  *Morgan*, 536 U.S. at 115 [citations omitted].  Accordingly, "[t]he timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened.  It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period.  Provided that an

act contributing to the claim occurs during the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Morgan*, 536 U.S. at 117. The Tenth Circuit has stated that "*Morgan* holds that a series of alleged events comprises the same hostile environment where 'the pre- and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'" *Duncan v. Manager, Dept. of Safety, City and County of Denver*, 397 F.3d 1300, 1309 (10th Cir. 2005) (*quoting Morgan*, 536 U.S. at 120).

Thus, "[t]o establish a hostile-work environment claim, 'a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gerald v. Locksley*, 785 F. Supp. 2d 1074, 1098 (D.N.M. 2011) (*quoting Davis v. U.S. Postal Service*, 142 F.3d 1334, 1341 (10th Cir. 1998)). Here, Plaintiff has alleged facts that, *inter alia*, after February 3, 2012, supervisors at the Facility failed to correct harassment when she reported it, but treated her as though she were under investigation for misconduct even after she had been absolved of wrongdoing, and that Defendant West sexually harassed her on at least two occasions in relation to her applications for a new position at the facility. Additionally, she alleges that another Sergeant repeatedly sexually harassed her but that Defendants took no corrective action when she reported it, and continued to assign her to work with her harasser. *See* Docket No. 79, pp. 10-14, ¶¶ 30-43. These allegations, which all fall within the 300-day window and further relate to

other allegations outside the 300-day window, timely and sufficiently state a claim of a hostile work environment.  **As such, the Plaintiff has stated a claim for relief under Count I as to Defendant ODOC.**

The continuing violation doctrine does not apply, however, to claims of discrete discriminatory acts, and here, Counts II (retaliation), III (quid pro quo sexual harassment), IV (failure to promote), and V (gender discrimination) are claims of discrete discriminatory acts.  *Morgan*, 536 U.S. at 122 ("We conclude that a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period – 180 or 300 days – set forth in 42 U.S.C. § 2000e-5(e)(1)."). *See also Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) ("[U]nexhausted claims involving discrete employment actions are no longer viable.").   Nevertheless, Plaintiff appears to rely on the continuing violation doctrine theory for all five Counts alleging violations of Title VII.  It is therefore not clear from the Plaintiff's complaint that these claims are proper for purposes of exhaustion.  She alleges that she has properly exhausted her claims because her EEOC Charge included names, dates, conduct, and the bases for her claims, and that she was not required to file a separate charge with each alleged discriminatory act.  The Court agrees that the Plaintiff may include more than one claim in an EEOC charge, but she must nevertheless comply with the time limits related to filing charges of discrete acts of discrimination.  *See Morgan*, 536 U.S. at 122.  Acts occurring over nearly two years therefore could not *all* be included in one EEOC charge alleging discrete acts of discrimination.  Plaintiff in her Second Amended Complaint has failed to distinguish between alleged acts within the 300-day window and those outside

the window, and further failed to specify the acts forming the basis of the alleged discrete acts of discrimination (as opposed to the generalized hostile work environment claim) and therefore it is not clear that she has exhausted her administrative remedies as to Counts II, III, IV, and V. Additionally, Plaintiff has not challenged Defendant's assertion that she failed to exhaust these claims, asserting only that the continuing violation doctrine supports her claim of a hostile work environment. *Campos v. Las Cruces Nursing Center*, 828 F. Supp. 2d 1256, 1271 (D.N.M. 2011) ("A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims.") (*citing Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 104 (1998)).

Moreover, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *citing Papasan v. Allain,* 478 U.S. 265, 286 (1986)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555, 556, 557, 570). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Plaintiff filed her Amended Complaint on May 19, 2014. *See* Docket No. 8. In response, all Defendants moved to

dismiss her Amended Complaint.  *See* Docket Nos. 13, 53-58, 69.  While those motions were pending, Plaintiff filed an opposed Motion to Amend her Complaint.  Docket No. 74.  The Court then granted all pending Motions to Dismiss, directing Plaintiff to file a Second Amended Complaint in compliance with *Ashcroft v. Iqbal*, 556 US. 662 (2009) within fourteen days.  The Minute Order stated, "[f]urthermore, the Plaintiff's Motion to Amend Complaint (Docket No. 74) is hereby GRANTED to the extent that the Plaintiff may add the currently proposed Count VIII to any second amended complaint filed herein."  Docket No. 78.  Plaintiff then filed a substantially similar Second Amended Complaint, with the addition of Count VIII.[5]  While the Plaintiff has sufficiently stated a plausible claim for relief as to Count I with the provision of the EEOC charge and the assertion of the continuing violation doctrine, she has otherwise failed to comply with this Court's previous order to file a Second Amended Complaint in compliance with *Iqbal*.  **Accordingly, the Court finds that Plaintiff's Counts II, III, IV, and V as to Defendant ODOC should be dismissed without prejudice under Fed. R. Civ. P. 12(b)(1) & (6).**

### B.  Counts VI and VIII:  42 U.S. § 1983

Equal Protection.  First, the Court notes that Plaintiff has stated Count VI is a "Violation of 42 U.S.C. § 1983" and Count VIII is a conspiracy to violate Section 1983.[6]

---

[5] The differences are outlined by Defendant ODOC in its renewed Motion to Dismiss, and the Court again declines to repeat them here save to note that there is little difference between them. *See* Docket No. 86, pp. 4-5.

[6] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured

*See* Docket No. 79, pp. 18, 20. "Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the Constitution or federal statute." *Kvech v. New Mexico Dept. of Public Safety*, 987 F. Supp. 2d 1162, 1186 (D.N.M. 2013) (*citing Spielman v. Hildebrand*, 873 F.2d 1377, 1386 (10th Cir. 1989)). Taking each claim under §1983 in turn, the Court thus construes Count VI as an allegation that Defendants violated her Equal Protection rights under 42 U.S.C. § 1983, because she has alleged that each of the individual Defendants was acting under color of state law (Docket No. 79, p. 15, ¶ 45), and that they violated her federally protected right of Equal Protection under the law as guaranteed by the Fourteenth Amendment (Docket No. 79, pp. 18-20, ¶¶ 59-60, 63-65). *See Kvech*, 987 F. Supp. 2d at 1186 ("To state a claim upon which relief can be granted under § 1983, a plaintiff must alleged: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law.") (*citing West v. Atkins*, 487 U.S. 42, 48 (1988)). Specifically in Count VI, the Plaintiff alleges that the individual Defendants violated these rights "as persons responsible at the Facility for administering and maintaining discipline, . . . by (i) approving of the intentional and hostile work environment at the Facility by failing to remedy Stewart's complaints, in violation of her rights under the Equal Protection Clause of the Fourteenth Amendment" and "(ii) engaging in disparate treatment of male and female employees with regard to discipline." Docket No. 79, pp. 18-19, ¶ 60. The Court further notes that "[i]n cases involving an equal-protection

---

by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" 42 U.S.C. § 1983.

violation based on sexual harassment, we have not required the plaintiff to show she was treated differently from a similarly situated individual. It is enough that the plaintiff presents sufficient evidence that the defendant discriminated against her because of her sex, thereby depriving her of the right to equal protection of the laws." *Eisenhour v. Weber County*, 744 F.3d 1220, 1235 (10th Cir. 2014). In response to these claims, the individual Defendants have raised the alternative defenses of the statute of limitations and qualified immunity, and the Court will address each in turn.

*Statute of Limitations*. "The statute of limitations is drawn from the personal-injury statute of the state in which the federal district court sits." *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (*citing Wilson v. Garcia*, 471 U.S. 261, 269 (1985)). The limitations period for personal injury actions under Oklahoma law is two years, *see* Okla. Stat. tit. 12, § 95(A)(3), making Plaintiff's § 1983 claims subject to the same two-year statute of limitations. "Federal law, however, determines the date on which the claim accrues and the limitations period starts to run." *Mondragon*, 519 F.3d at 1082 (*citing Wallace v. Kato*, 549 U.S. 384, 388 (2007)). "Claims under 42 U.S.C. § 1983 assert a violation of a federal right. Such claims accrue when a plaintiff knows or should know his rights have been violated. A plaintiff 'need not have conclusive evidence of the cause of an injury in order to trigger the statute of limitations.'" *Perry v. Geo Group, Inc.*, 2009 WL 3698473, at *7 (W.D. Okla. Nov. 4, 2009) (*quoting Alexander v. Oklahoma*, 382 F.3d 1206, 1216 (10th Cir. 2004)). A civil rights action accrues "when facts that would support a cause of action are or should be apparent." *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (quotation omitted).

Here, claims under Section 1983 accruing before August 28, 2011 are barred by the applicable two-year limitations period because Plaintiff filed her original state court Petition on August 28, 2013. *See* Docket No. 3, Ex. 1. The Plaintiff nevertheless contends that the "continuing violation doctrine" applies here. Because the Tenth Circuit has not definitively ruled on whether the continuing violation doctrine applies to § 1983 claims, the Court acts as others have and assumes without deciding that it does apply. *See, e. g.*, *Loard v. Sorenson*, 561 Fed. Appx. 703, 706 (10th Cir. 2014) ("Assuming, without deciding, that the continuing violation doctrine applies to § 1983 claims . . ."); *Perry v. Geo Group, Inc.*, 2009 WL 3698473, at *8. But even under the continuing violation doctrine, at least one of the alleged wrongful acts must have occurred within the statutory period. *See McCormick v. Farrar*, 147 Fed. Appx. 716, 720 (10th Cir. 2005) (*citing Furr v. AT&T Technologies, Inc.*, 824 F.2d 1537, 1543 (10th Cir. 1987), and *Morgan*, 536 U.S. at 117). Accordingly, Plaintiff's § 1983 claims against Defendants Collins and McGuire are hereby dismissed because all of Plaintiff's allegations as to these two defendants occurred prior to August 28, 2011.[7]

*Qualified Immunity*. As to the remaining nine individual Defendants, each asserts that they are entitled to qualified immunity for the Equal Protection claims under § 1983.

---

[7] The Court notes that the Plaintiff's allegations against Defendants Martin and Murry likewise precede August 28, 2011, but that these individual Defendants have not raised this argument as an affirmative defense. There is some question in this Circuit as to whether the statute of limitations is a jurisdictional issue, *see, e. g.*, *McCoy v. Damron*, 9 Fed. Appx. 994, 996 (10th Cir. 2001), but this Court holds to the Tenth Circuit's general precedent under *Murphy v. Klein Tools, Inc.*, 935 F.2d 1127 (10th Cir. 1991), that "dismissal on limitations grounds is a judgment on the merits." *Id.* at 1128-1129. Accordingly, the Court proceeds to the arguments actually raised by Defendants Martin and Murry. *See United States v. Martinez*, 518 F.3d 763, 767 n.2 (10th Cir. 2008) (argument not raised in opening brief was waived.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Once a defendant has asserted a qualified immunity defense, "the plaintiff must meet a strict two-part test" to establish "'(1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct[.]'" *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (*quoting Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009)). *See also Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) ) (same). "When qualified immunity is asserted in the context of a motion to dismiss, the factual allegations of the complaint are assumed to be true, and the court's analysis generally aligns with the analysis applied with determining the sufficiency of a claim." *Harper v Woodward County Bd. Of County Commissioners*, 2014 WL 7399367, at *8 (W.D. Okla. Dec. 29, 2014) (*citing Brown*, 662 F.3d at 1162-1164 and *Iqbal*, 556 U.S. at 666, 673-675, 677-684).

In light of the Supreme Court's *Pearson* decision, this Court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. "Whether a right is 'clearly established' is an objective test." *Brown*, 662 F.3d at

1164.  "'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010) (*quoting Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  "'In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'"  *Stearns*, 615 F.3d at 1282 (*quoting Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999)).  "In determining whether a right is clearly established, the relevant inquiry is 'whether it would be clear to a [reasonable government official] that his conduct was unlawful in the situation he confronted.'"  *C.G. v. City of Fort Lupton*, 2014 WL 2597165, at *7 (D. Colo. June 10, 2014) (*quoting Saucier*, 533 U.S. at 202).  In this Circuit, "[t]he right to be free from sexual harassment is clearly established under the Equal Protection Clause of the Fourteenth Amendment."  *Kramer v. Wasatch County Sheriff's Office*, 743 F.3d 726, 758 (10th Cir. 2014) (*citing Starrett v. Wadley*, 876 F.2d 808, 814 (1989)).  As an initial matter, the Court finds that "it has been clearly established since our holding in 1989 in *Starrett* [*v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989] that sexual harassment . . . can violate the Fourteenth Amendment right to equal protection of the law.  Moreover, it has been clearly established since at least 1992 that a person who exercised the state's supervisory authority may be held liable for consciously acquiescing in sexually harassing conduct by a non-state actor over whom the state actor has authority."  *Murrell v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999) [internal

citations omitted]. Since the Plaintiff has thus satisfied the second part of the test, the Court turns to whether the Plaintiff has properly alleged each Defendant violation a constitutional or statutory right.

"Section 1983 does not authorize liability under a theory of respondeat superior." *Brown*, 662 F.3d at 1164 (*citing Monell v. Dep't of Social Services*, 436 U.S. 658, 691 (1978)). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The Tenth Circuit has interpreted this to mean that "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy" causing the constitutional harm. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). This takes the form of either personal liability through personal involvement, *or* supervisory liability based on a violation of a policy. *Brown*, 662 F.3d at 1164-1165 ("Personal liability under § 1983 must be based on . . . personal involvement, and supervisory liability must be based on his Policy."). It thus becomes the Plaintiff's burden to demonstrate for purposes of supervisory liability that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199-1200 ("Denying qualified immunity on the basis of such a showing complies with *Iqbal*'s requirement that § 1983 liability only be imposed upon those defendants whose

own individual actions cause a constitutional deprivation because it requires plaintiffs prove each defendant took some act with the constitutionally applicable state of mind that caused the alleged constitutional violation.") (citation omitted). "Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original). As such, the task remaining before the Court is therefore whether *each defendant* has violated the Plaintiff's constitutional or statutory rights.

To establish personal involvement for supervisory liability it is insufficient "merely to show [that the supervisor] was in charge of other state actors who actually committed the violation." *Dodds*, 614 F.3d at 1195, (quotation omitted). What *is* required is that the "plaintiff must plead that *each* Government-official defendant, through the official's own individual actions, has violated the Constitution." *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 768 (10th Cir. 2013) (emphasis added) (*quoting Iqbal*, 556 U.S. at 676). As to causation, the Plaintiff is required "to show that the defendant's alleged action(s) caused the constitutional violation" by "set[ting] in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Schneider*, 717 F.3d at 768 (alteration in original) (*quoting Dodds*, 614 F.3d at 1185, 1200). As to the third element, "[p]recisely what state of mind is required for individual liability depends on the type of claim a plaintiff brings," *Schneider*, 717 F.3d at 769, but

"'can be no less than the *mens rea* required' of the subordinates to commit the underlying constitutional violation." *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (*quoting Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010)). In *Dodds*, the Tenth Circuit cited *Iqbal* for the proposition that the state of mind required to establish a violation of Equal Protection guarantees is purposeful discrimination. 614 F.3d at 1198 (*citing Iqbal*, 556 U.S. at 676-677, 683). "In sum . . . plaintiffs here must establish that **each defendant** – whether by direct participation or by virtue of a policy of which he possesses supervisory responsibility – caused a violation of plaintiffs' clearly established constitutional rights, and that each defendant acted with the constitutionally requisite state of mind." *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013) (emphasis added). *See also Brown*, 662 F.3d at 1164-1165 ("Personal liability under § 1983 must be based on Secretary Williams's personal involvement, and supervisory liability must be based on his Policy."). Although it is unclear from the Second Amended Complaint that the Plaintiff has stated an Equal Protection claim against any of the Defendants based on personal liability (as opposed to supervisory liability), the Court addresses both personal liability and supervisory liability for each Defendant out of an abundance of caution. The Plaintiff's allegations as to each of the remaining nine defendants are addressed in turn below.

**Edward Bell**. The Plaintiff alleges that Defendant Bell, in his position as Chief of Security, was present at a meeting with the Warden in which they threatened to transfer her to another prison following an allegation that she had sexual contact with an inmate, but they refused to provide her with details of when and whether she was actually

working on the day the acts were supposed to have taken place. Docket No. 79, p. 7, ¶ 19. She further alleges that a co-worker told her that Chief of Security Bell asked him six times whether he had slept with the Plaintiff, and that "Facility chain of command failed to take appropriate action to instruct Facility employees to stop spreading rumors." *Id.* at p. 8, ¶ 22. She further alleges that in response to an Incident/Staff Report, Bell only told one shift – rather than every shift – to stop spreading rumors about her, and that "Facility chain of command failed to take appropriate action[.]" *Id.* at p. 9, ¶ 23. She alleges that Bell told her he would handle rumors that the Plaintiff had sex with a Hepatitis-C positive inmate, but "the issue was never discussed with [the employee] and no reprimand occurred." *Id.* at p. 9, ¶ 24. Finally, she alleges that despite prior approval and awareness that she had a job interview scheduled, Bell and co-Defendants Hendrex and Carey would not relieve her of her duties and caused her to be late and to have to wear her DOC uniform. *Id.* at p. 12, ¶ 37. Defendant Bell asserts that the Plaintiff has failed to assert facts to overcome his entitlement to qualified immunity, and Plaintiff argues that Defendant's actions demonstrate deliberate indifference to her ongoing harassment.

As to personal liability with regard to Defendant Bell, the Plaintiff's allegations, in sum, are that Defendant Bell: (i) threatened to transfer her based on an allegation that she had an inappropriate relationship with an inmate but did not give her the specifics of the allegation, (ii) asked another male officer six times whether that male officer had slept with the Plaintiff, and (iii) made her late for a job interview despite prior approval. None of these allegations indicate that Defendant Bell violated the Plaintiff's Equal Protection rights. Repeatedly questioning the other male officer about rumors he had engaged in

sexual activity with the plaintiff is certainly offensive, but it does not properly allege a hostile work environment based on the Plaintiff's sex because such actions were aimed at both the female Plaintiff and another male officer. *Huffman v. City of Prairie Village, Kan.*, 980 F. Supp. 1192, 1197-1198 (D. Kan. 1997) ("Both the comments concerning plaintiff dating Sgt. Nealey and the noises made by Sgt. Ozorkiewicz were directed at both plaintiff and Sgt. Nealey. These comments were obviously designed to embarrass both plaintiff and Sgt. Nealey. There is no evidence that the comments and noises were aimed only at plaintiff. The court does not find that this conduct, although offensive, was made because of plaintiff's sex. . . . Accordingly, this conduct cannot be used to establish a hostile work environment based on sex."). Although "conduct that affects both sexes may constitute sexual harassment if it disproportionately affects female staff[,]" *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1244 (10th Cir. 2001), the Plaintiff has provided no statements to that effect in her Second Amended Complaint. Moreover, she has failed in Count VI of her Second Amended Complaint to isolate Defendant Bell's allegedly unconstitutional acts, thereby failing to provide proper notice of the claims against him. *Robbins*, 519 F.3d at 1250 ("Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state. . . . Count I of Mr. Robbins' and Ms. Gillum's complaint fails to isolate the allegedly unconstitutional acts of each defendant, and thereby does not provide adequate notice as to the nature of the claims against each.").

Indeed, even in her response to Defendant Bell's Motion to Dismiss, she simply recites the factual allegations as to Defendant Bell, then asserts those facts establish deliberate indifference (an assertion not found in her Second Amended Complaint). *See Dodds*, 614 F.3d at 1191 ("Once a defendant asserts qualified immunity, the plaintiff bears the burden of satisfying [the] strict two-part test.") (*quoting McBeth*, 598 F.3d at 716, *quoting Bowling*, 584 F.3d at 964).

As to supervisory liability, the Plaintiff has failed to allege that Defendant Bell was responsible for a policy that caused her alleged constitutional harm, and further failed to plead that he acted with any particular state of mind, much less the state of mind sufficient to establish a constitutional deprivation. *See Pahls*, 718 F.3d at 1228. *See also Brown v. Glanz*, 2013 WL 6909959, at *8 (N.D. Okla. Dec. 31, 2013) (slip op.) ("[S]he has not identified what those practices and policies are, what defendant did that constituted or authorized discrimination, harassment or hostility, or how any such actions impacted her."); *Nelson v. Glanz*, 2011 WL 3626769, at *3 (N.D. Okla. Aug. 17, 2011) ("Plaintiff claims that Glanz was aware of complaints of discrimination and failed to take action, but this is not sufficient to support an inference that Glanz purposefully and intentionally engaged in racial discrimination."). **Accordingly, the Plaintiff has failed to allege a claim that would overcome Defendant Bell's defense of qualified immunity, so the Plaintiff's claims against Defendant Bell must therefore be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).**

**Phillip Carey**.  The Plaintiff alleges that she filed a report in which she requested to file criminal charges against an inmate who was spreading false rumors that the inmate was having sexual intercourse with the Plaintiff, and that in his position as Chief of Security, Carey told her he would take care of it informally, which she did not want because she wanted to file formal charges.  She then states that "Facility chain of command failed to take any corrective actions[.]"  Docket No. 79, pp. 10-11, ¶ 31. Additionally, she alleges that Defendant Carey, along with Defendants Bell and Hendrex, would not relieve her of her duties on time and caused her to be late for a job interview. Docket No. 79, p. 12, ¶ 37.  She further alleges that Carey, along with co-Defendant Richardson, denied her the right to leave work when she contracted poison ivy and needed treatment, and that same day told her he could teach her how to become an "ass kisser" while looking her up and down.  Docket No. 79, p. 13, ¶ 38.  Plaintiff argues that his actions constitute deliberate indifference because he was aware of but did not correct the harassment against her, while Defendant Carey argues that none of these allegations assert a constitutional violation.  The Court agrees that there is no allegation that the Defendant personally violated a constitutional or statutory right and that the Plaintiff has failed to allege personal liability.  As to supervisory liability, the Court finds that the Plaintiff has failed to allege that Defendant Carey was responsible for a policy that caused her alleged constitutional harm, and further failed to plead that he acted with any particular state of mind, much less the state of mind sufficient to establish a constitutional deprivation.  *See Pahls*, 718 F.3d at 1228; *Nelson v. Glanz*, 2011 WL 3626769, at *3. **Accordingly, the Plaintiff has failed to allege a claim that would overcome**

**Defendant Carey's defense of qualified immunity, so the Plaintiff's claims against Defendant Carey must therefore be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).**

**Terry Martin**.  The Plaintiff alleges that she reported to Defendant Martin (and co-Defendant Murry) that she had been required to perform a pat down of male inmates while another Sergeant looked on and gave the inmates "'thumbs up' and winked at them," and that "no corrective action was taken by Facility chain of command."  Docket No. 79, p. 3, ¶ 9.  She further alleges that another Sergeant had sent her "unwanted nude photographs of himself and repeatedly made sexually inappropriate comments and propositions," which she reported to Defendant Martin, as well as co-Defendants Collins, Murry, and Mullin, and that "no corrective action was taken by any member of the Facility chain of command."  Docket No. 79, p. 4, ¶ 12.  These facts contain no allegations of personal liability, and thus the Court proceeds to the issue of supervisory liability.  Here, the Plaintiff has failed to allege that Defendant Martin was responsible for a policy that caused her alleged constitutional harm, and further failed to plead that he acted with any particular state of mind, much less the state of mind sufficient to establish a constitutional deprivation.  *See Pahls*, 718 F.3d at 1228; *Nelson v. Glanz*, 2011 WL 3626769, at *3.  **Accordingly, the Plaintiff has failed to allege a claim that would overcome Defendant Martin's defense of qualified immunity, so the Plaintiff's claims against Defendant Martin must therefore be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).**

**Michael Mullin**.  The Plaintiff alleges that another Sergeant had sent her "unwanted nude photographs of himself and repeatedly made sexually inappropriate comments and propositions," which she reported to Defendant Mullin, the Warden, as well as co-Defendants Collins, Murry, and Martin, and that "no corrective action was taken by any member of the Facility chain of command."  Docket No. 79, p. 4, ¶ 12. Additionally, she alleges that Defendants Mullin and Murry became aware of rumors she had engaged in unlawful, inappropriate contact and sexual relations with Facility inmates and staff, and that she was required to answer as to a list of employees she was alleged to have engaged in this conduct with.  She alleges that Mullin "slammed an envelope down on his desk, declared that he was disgusted with Stewart's conduct and, in a threatening tone, demanded that she tell the truth."  She alleges that Defendant Mullin threatened to notify internal affairs and that she would see her name in newspapers.  Upon investigation, "all parties advised that no one had had sexual relations with Stewart," but the rumors persisted and "[n]o corrective action was taken."  Docket No. 79, pp. 5-6, ¶ 16.  Additionally, Warden Mullin, along with Defendant Bell, threatened to transfer her to a women's prison following a false allegation that she had sex with an inmate but refused to provide her with details of when and whether she was actually working on the day the acts were supposed to have taken place.  Docket No. 79, ¶ 19.  Following the Internal Affairs investigation, she repeatedly requested status updates and a complete report.  She was told in December 2011 the investigation had been completed, but that she would not be assigned to her normal post until paperwork had been approved. Plaintiff alleges that Warden Mullen never provided her with a complete set of the

reports, only transferred one inmate and one officer to another facility, and that "Facility chain of command failed to take any other corrective actions" or issue any other reprimands. On January 20, 2012, Warden Mullin allowed her to return to duty on the interior of the prison, and she was absolved of wrongdoing by internal affairs on March 26, 2012. She nevertheless alleges that "Facility chain of command failed to take any corrective actions to deal with the harassment and false accusations." Docket No. 79, pp. 9-10, ¶¶ 25-27, 29-30.

The Plaintiff asserts that Defendant Mullin's failure to take corrective action demonstrated deliberate indifference, and Defendant Mullin asserts that his actions do not establish a constitutional violation. These facts contain no allegations of personal liability, and thus the Court proceeds to the issue of supervisory liability. In sum, the facts alleged are that when she reported harassment, Defendant Mullin did nothing, but that when rumors arose that she engaged in inappropriate conduct, Defendant Mullin investigated the rumors against her and did nothing to stop these rumors even when they were proven false. Here, the Court notes that Defendant Mullin's position of Warden likely make him the chief policy-maker at the Facility, as well as Plaintiff's repeated statements that "Facility chain of command failed to take corrective action." *Moody v. Oklahoma Dept. of Corrections*, 879 F. Supp. 2d 1275, 1287 (N.D. Okla. 2012) ("[T]his evidence creates disputed questions of fact as to whether Defendant Province, the chief policy-maker at the facility, possessed the ultimate responsibility for a *de facto* custom of inaction with regard to sexual harassment allegations, and whether that custom directly resulted in a deprivation of Plaintiff's constitutional rights."). Nevertheless, the requisite

state of mind to establish supervisory liability is lacking on the face of the Second Amended Complaint, *see Dodds*, 614 F.3d at 1198 ("Ashcroft and Mueller's alleged deliberate indifference to or knowledge and acquiescence in their subordinates' unconstitutional conduct or discriminatory animus, alone, did not amount to the state of mind required to establish Ashcroft and Mueller violated equal protection guarantees – purposeful discrimination – and the Court dismissed Iqbal's claims against them.") (*citing Iqbal*, 556 U.S. at 677-678, 682-683), as well as any reference to a policy at the facility for which the Warden was responsible. **Accordingly, the Plaintiff has failed to allege a claim that would overcome Defendant Mullin's defense of qualified immunity, so the Plaintiff's claims against Defendant Mullin must therefore be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).**

**Michael Murry**. The Plaintiff alleges that she reported to Defendant Murry (and co-Defendant Martin) that she had been required to perform a pat down of male inmates while another Sergeant looked on and gave the inmates "'thumbs up' and winked at them," and that "no corrective action was taken by Facility chain of command." Docket No. 79, p. 3, ¶ 9. She further alleges that she provided Murry with documentation of sexual harassment from another Lieutenant at the Facility, and "[d]espite receiving documentation, the Facility chain of command took no corrective action[.]" Docket No. 79, pp. 3-4, ¶ 10. She further alleges that another Sergeant had sent her "unwanted nude photographs of himself and repeatedly made sexually inappropriate comments and propositions," which she reported to Defendant Murry, as well as co-Defendants Collins,

Martin, and Mullin, and that "no corrective action was taken by any member of the Facility chain of command." Docket No. 79, p. 4, ¶ 12. She alleges that Murry confronted her with false allegations of sexual misconduct which she disproved, but that the rumors persisted and "no corrective action was taken." Docket No. 79, p. 5, ¶ 15. Additionally, she alleges that Defendants Mullin and Murry became aware of rumors she had engaged in unlawful, inappropriate contact and sexual relations with Facility inmates and staff, and that she was required to answer as to a list of employees she was alleged to have engaged in this conduct with. She alleges that Defendant Murry investigated the allegations and "all parties advised that no one had had sexual relations with Stewart," but that the rumors persisted and "[n]o corrective action was taken." Docket No. 79, pp. 5-6, ¶ 16. Plaintiff further alleges that when she reported she had been fondled by a fellow employee during a training pat down, Defendant Murry told her "she needed to get tougher skin." Docket No. 79, p. 7, ¶ 18. Plaintiff argues in her Response to Defendant Murry's Motion to Dismiss that Defendant Murry did nothing to deal with the hostile work environment. None of these allegations, however, indicate that Defendant Murry himself committed a constitutional violation. Most of the allegations are that she made reports, and in one instance, Defendant Murry himself investigated the allegations and determined they were unfounded. As such, the Plaintiff has not alleged personal liability. As to supervisory liability, the Plaintiff has failed to allege that Defendant Murry was responsible for a policy that caused her alleged constitutional harm, and further failed to plead that he acted with any particular state of mind, much less the state of mind sufficient to establish a constitutional deprivation. *See Pahls*, 718 F.3d at 1228; *Nelson v.*

*Glanz*, 2011 WL 3626769, at \*3.  **Accordingly, the Plaintiff has failed to allege a claim that would overcome Defendant Murry's defense of qualified immunity, so the Plaintiff's claims against Defendant Murry must therefore be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).**

**Peter Richardson**.  Plaintiff alleges that Lieutenant Richardson took no action when he ordered a simulated pat down as part of a training exercise and observed another Sergeant bounce and fondle Plaintiff's breast during the simulation and in front of five other officers.  Docket No. 79, p. 7, ¶ 18.  She states that she and two others documented the incident in reports, but that Lieutenant Richardson witnessed it and took no action.  *Id.*  She further alleges that Richardson, along with Defendant Carey, denied her the right to leave work to seek medical treatment for poison ivy.  Docket No. 79, p. 13, ¶ 38.  Plaintiff has alleged in her Second Amended Complaint that the Defendant (i) led a training exercise, and (ii) refused to let her leave work early.  She argues that the Court is to infer that the Defendant was acting in retaliation and demonstrating discrimination when he refused to let her leave early, but those allegations are not before the Court.  None of these facts allege that Defendant Richardson personally participated in alleged sexual harassment; thus the question becomes whether the Plaintiff has sufficiently alleged a claim of liability in his supervisory capacity.  Although Lieutenant Richardson's failure to intervene in alleged sexual harassment by another employee may have been sufficient to establish the personal involvement prong prior to *Iqbal*, the Supreme Court in *Iqbal* "articulated a stricter liability standard for this first element of

-32-

personal involvement" such that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Schneider*, 717 F.3d at 768 (*citing Iqbal*, 556 U.S. at 676). Furthermore, she cites to no policy for which Lieutenant Richardson was responsible, and does not allege Lieutenant Richardson acted with any particular state of mind, much less the state of mind sufficient to establish a constitutional deprivation. *See Pahls*, 718 F.3d at 1228. *See also Onodera v. Dowis*, 2011 WL 3666748, at *7 n.2 (D. Colo. June 6. 2011) ("The Courts of Appeal have not provided clear guidance regarding precisely what a plaintiff must show to demonstrate more than mere acquiescence by the defendant. But *Iqbal* and *Serna* indicate that the defendant's state of mind is the linchpin of the analysis. In *Iqbal*, the Supreme Court suggested that a defendant who acquiesces in a constitutional violation by her subordinates is personally involved in the violation only if her acquiescence is motivated by a 'purpose' to allow or further the violation. In *Serna*, the court of Appeals for the Tenth Circuit suggested that a defendant supervisor who acquiesces in a constitutional violation is personally involved in that violation only if she shares the same 'state of mind' with her subordinates who actually commit the violation.") (*citing Iqbal*, 556 U.S. at 677, and *Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006)). **Accordingly, the Plaintiff has failed to allege a claim that would overcome Defendant Richardson's defense of qualified immunity, so the Plaintiff's claims against Defendant Richardson must therefore be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).**

**Casey Bennefield**.  Plaintiff alleges that when she made Lieutenant Bennefield aware of an inappropriate comment made about her, he advised her that he would talk to the person who made the comment, and Plaintiff later received a call from Chief of Security Bell (a co-Defendant) who informed her he had taken care of the situation. Docket No. 79, p. 9, ¶ 24.   She further alleges that even after an Internal Affairs investigation was completed, Bennefield continued to treat her as though she were under investigation and refused to assign her positions "inside the fence," then "verbally assaulted" her and told her she was not allowed inside the fence when she went inside the fence to use the restroom.   Docket No. 79, p. 11, ¶ 32.   She also alleges that she repeatedly reported sexual harassment to Bennefield and asked that she not have to work with the person harassing her, "but they ignored her pleas.   The Facility chain of command failed to take any corrective action to deal with the relentless harassment and failed to reprimand [Bennefield]."   Docket No. 79, pp. 13-14, ¶ 40.   Defendant Bennefield asserts that under these facts, he actually remedied the inappropriate comments discussed in ¶ 24, that a direct order from a supervisor to exit an area in which she is not allowed is not sexual harassment, and that the Plaintiff failed to allege personal participation of any sexual harassment.   Plaintiff merely asserts in her response that his actions contributed to the continuing hostile work environment.   The Court agrees that the Plaintiff has not alleged personal liability for a constitutional violation in ¶¶ 24 and 32.  As to the issue of supervisory liability that was arguably raised in ¶ 40, Plaintiff's allegation is that "Facility chain of command failed to take correction action," including reprimanding Defendant Bennefield.   As such, she has failed to alleged that Defendant

Bennefield was responsible for a policy that caused her alleged constitutional harm, and further failed to plead that he acted with any particular state of mind, much less the state of mind sufficient to establish a constitutional deprivation. *See Pahls*, 718 F.3d at 1228. *See also Brown v. Glanz*, 2013 WL 6909959, at *8 ("[S]he has not identified what those practices and policies are, what defendant did that constituted or authorized discrimination, harassment or hostility, or how any such actions impacted her.").

**Accordingly, the Plaintiff has failed to allege a claim that would overcome Defendant Bennefield's defense of qualified immunity, so the Plaintiff's claims against Defendant Bennefield must therefore be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).**

**Joseph Hendrex**. Plaintiff alleges that she had to repeatedly ask Lieutenant Hendrex to remove an inmate who asked her a question of a sexual nature. Docket No. 79, p. 11, ¶ 33. Additionally, she alleges that Hendrex, along with co-Defendants Carey and Bell, refused to relieve her of her duties despite prior approval and caused her to be late for a job interview. Docket No. 79, p. 12, ¶ 37. She alleges that she reported sexual harassment to Lieutenant Hendrex, but he ignored her pleas and "Facility chain of command failed to take any corrective action[]" and failed to reprimand him. Docket No. 79, pp. 13-14, ¶ 40. Finally, she alleges that Lieutenant Hendrex witnessed someone make a sexually suggestive statement to her, and Hendrex stated that the person making the comment was "lucky he could get away with talking to Stewart like that," and failed to report the incident and that no one reprimanded the individual. Docket No. 79, p. 14, ¶ 41. Defendant Hendrex correctly asserts that none of these allegations established that he

personally participated in sexual harassment, and the Plaintiff's only response is that the facts establish that Hendrex acted with deliberate indifference. The Court thus agrees that these facts do not establish personal liability as to Defendant Hendrex. Additionally, the Court finds that the Plaintiff has failed to allege supervisory liability as to Defendant Hendrex. She has failed to alleged that Defendant Hendrex was responsible for a policy that caused her alleged constitutional harm, and further failed to plead that he acted with any particular state of mind, much less the state of mind sufficient to establish a constitutional deprivation. *See Pahls*, 718 F.3d at 1228. **Accordingly, the Plaintiff has failed to allege a claim that would overcome Defendant Hendrex's defense of qualified immunity, so the Plaintiff's claims against Defendant Hendrex must therefore be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).**

**Kelly West**. Plaintiff alleges that Defendant West, a Case Manager at Jess Dunn Correctional Facility, suggested he would help her with a job application if she would perform sexual favors for him, and that if she were hired he would perform her training. She did not get the job after she rebuffed him, despite having a degree in criminal justice administration and more experience at the facility than the person who was ultimately hired. Docket No. 79, pp. 11-12, ¶ 35. She also alleges that when she applied for another position at Eddie Warrior Correctional Center, Defendant West "told [her] that if she went down on him or better yet, slept with him he would make sure she got the position because he knows people and was going to be on the interview panel." Again, she

alleges that she was not hired for the other job despite having a college degree and more experience than the other applicants. Docket No. 79, pp. 12-13, ¶ 37.

Defendant West's actions as alleged are clear allegations of sexual harassment, and he admits as much in his Motion to Dismiss. *See* Docket No. 80, pp. 18-19. Accordingly, he is not entitled to a grant of qualified immunity under the facts alleged. He nevertheless argues that the claims against him should be dismissed because he was not acting under color of state law and that his actions are not clearly established by the law. In the Tenth Circuit, however, "in certain instances co-employees may exercise de facto authority over sexual harassment victims such that they act under color of law." *David v. City and County of Denver*, 101 F.3d 1344, 1354 (10th Cir. 1996). While it is true that "plaintiffs' allegations that 'all defendants acted under color of state law' are insufficient to meet the heightened pleading standards imposed when a defendant raises the qualified immunity defense[,]" *Brasko v. City of Caney, Kan.*, 131 F.3d 151, 1997 WL 759093, at *4 (10th Cir. Dec. 9, 1997) (unpublished table opinion), here the Plaintiff's allegations in ¶ 37 are nudged across the line to sufficient for dismissal purposes where she alleges that Defendant West attempted to exercise his hiring authority over her in the course of his sexual harassment. *Johnson v. Martin*, 195 F.3d 1208, 1218 (10th Cir. 1999) ("[A] public official's reasonable application of the prevailing law would lead him to conclude that to abuse any one of a number of kinds of authority for purpose of one's own sexual gratification . . . would violate the Equal Protection Clause."). **Accordingly, the allegations against Defendant West do not establish that he would be entitled to qualified immunity on the Plainitff's claim against him, and**

**said claim therefore cannot be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).**

In summary, the Plaintiff's Equal Protection claims as to Defendants Bell, Carey, Martin, Mullin, Murry, Richardson, Bennefield, and Hendrex are hereby dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), but Plaintiff's claims as to Defendant West cannot be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

Civil Conspiracy Claim.   As to Count VIII, the Court notes that "[a]llegations of conspiracy may, indeed, form the basis of a § 1983 claim." *Tonkovich v. Kansas Bd. Of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).   "However, a plaintiff must allege specific facts showing [1] an agreement and [2] concerted action amongst the defendants."  *Id.* (*citing Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994)).   Here, the Plaintiff has alleged facts supporting neither of these elements.   A mere allegation of a conspiracy is insufficient under § 1983.   Accordingly, the Court finds that the Plaintiff has failed to state a claim with regard to Count VIII, civil conspiracy by approving of and failing to remedy a hostile work environment, and engaging in disparate treatment of male and female employees.

## CONCLUSION

Accordingly, the Court finds that the Motion to Dismiss Defendants Collins, McGuire, Richardson, Bennefield, Hendrex, and West [Docket No. 80] IS HEREBY GRANTED IN PART as to Defendants Collins, McGuire, Richardson, Bennefield, and Hendrex in their individual and official capacities, and Defendant West in his official

capacity, and DENIED IN PART as to Defendant West in his individual capacity. Defendant Edward Bell's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 81] IS HEREBY GRANTED. Defendant Phillip Carey's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 82] IS HEREBY GRANTED. Defendant Terry Martin's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 83] IS HEREBY GRANTED. Defendant Michael Mullins's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 84] IS HEREBY GRANTED. Defendant Michael Murry's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 85] IS HEREBY GRANTED. Finally, Defendant Oklahoma Department of Corrections' Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 86] IS HEREBY GRANTED IN PART and DENIED IN PART. Finally, the Plaintiff Marcilla Nicole Stewart's Motion for the Court to Take Judicial Notice [Docket No. 89] is hereby GRANTED.

IT IS SO ORDERED this 25th day of March, 2016.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma